Michael J. Roessner, #MR4195
Derek Bentsen*
Stephen L. Cohen*
J. Lee Buck, II*
John P. Lucas*
Andrew R. McFall*
SECURITIES AND EXCHANGE COMMISSION
100 F Street N.E.
Washington, DC 20549-4030
Tel: (202) 551-4347 (Roessner)

*Not admitted to the U.S. District Court for the Eastern District of New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>    - against -<br><br>GREGG R. MULHOLLAND,<br><br>         Defendant. | No. 15 Civ. _____<br><br>COMPLAINT |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1. This case involves an unregistered distribution of the securities of Vision Plasma Systems, Inc. ("Vision Plasma") by Gregg R. Mulholland ("Mulholland")—a recidivist who is past due on a $5,309,434.94 judgment owed to the Commission—in violation of Sections 5(a) and 5(c) of the Securities Act of 1933 [15 U.S.C. §§ 77e] ("Securities Act").

2. To facilitate his unregistered distribution of Vision Plasma securities, Mulholland utilized the services of an offshore entity that specialized in setting up international business corporations ("IBCs") with complicated legal structures and nominee owners, which hid the fact that Mulholland controlled and was the ultimate beneficial owner of those IBCs and any securities held by those IBCs.

3. Prior to the opening of trading on August 16, 2012, Mulholland was the beneficial owner of at least 84% of the issued and outstanding shares of Vision Plasma. Specifically, Mulholland beneficially owned at least 84 million Vision Plasma shares without a restricted legend, which represented approximately 84% of the total Vision Plasma "public float." Mulholland also held more than 230 million shares with a restricted legend.

4. On August 16, 2012, Mulholland sold—through nine IBCs beneficially owned by him—at least 83,050,000 shares of Vision Plasma for proceeds of approximately $21,645,753. No registration statement was filed with the Commission or in effect covering those stock sales, and Mulholland could not rely on any exemption from registration.

5. By the conduct described herein, Mulholland violated the registration provisions of the federal securities laws and will continue to violate those provisions unless restrained or enjoined by this Court. Accordingly, the Commission seeks injunctive relief, disgorgement of ill-gotten gains, prejudgment interest, civil penalties and other appropriate and necessary equitable and ancillary relief.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Securities Act Sections 20(d)(1) and 22(a) [15 U.S.C. §§ 77t(d)(1) and 77v(a)].

7. Mulholland, directly or indirectly, made use of the means and instrumentalities of interstate commerce, of the mails or of the facilities of a national securities exchange, in connection with the acts, practices and courses of business alleged herein, certain of which occurred within the Eastern District of New York.

8. Venue in this district is proper under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] because certain of the acts, practices, transactions and courses of business constituting the violations alleged herein occurred within the Eastern District of New York.

## THE DEFENDANT

9. **Gregg R. Mulholland** is a Canadian citizen who resides in Vancouver, British Columbia, Canada. Mulholland was previously sued by the Commission in December 2011 in connection with the pump-and-dump of Rudy Nutrition.[1] In that case, Mulholland entered a bifurcated settlement in which he consented to an injunction against violations of Sections 5, 17(a), and 17(b) of the Securities Act, and Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 thereunder, as well as a penny stock bar, which were ordered on January 19, 2012. The Commission subsequently obtained an order against Mulholland for $5,309,434.94 in disgorgement, prejudgment interest, and civil penalties, none of which has been paid to date.

---

[1] *SEC v. Ruettiger et al.*, Case No. 2:11-cv-2011 (D. Nev. Dec. 16, 2011).

## OTHER RELEVANT ENTITIES

10.  **Vision Plasma Systems, Inc. f/k/a Bonanza Land Holdings Inc.** is a revoked Nevada corporation whose last disclosed business address was in Reno, NV. From the fall of 2011 until the present, Vision Plasma's common stock was quoted on OTC Link under the symbol VLNX.

11.  **Legacy Global Markets S.A. ("Legacy Global")** purports to be a foreign broker-dealer and investment management and advisory firm. Legacy Global's headquarters is in Belize.

12.  **Caledonian Bank Ltd. ("Caledonian Bank")** was a foreign bank that provided banking, custody and trade execution services. Its headquarters is in the Cayman Islands. Caledonian Bank filed for bankruptcy in February 2015.

13.  **Foreign Bank A** is a foreign bank that provides banking, custody and trade execution services. Its headquarters is in the Cayman Islands.

14.  **Brokerage Firm A** is a registered broker-dealer located in Scottsdale, Arizona.

## FACTS

15.  On approximately June 30, 2011, Vision Plasma purportedly effectuated a reverse merger with an operating company located in British Columbia, Canada (the "Canadian operating company"). At the time of the reverse merger, Vision Plasma was a public shell company under the control of a receiver, who was also Vision Plasma's purported transfer agent at the time.

16. Vision Plasma's receiver purportedly held a Colorado state court judgment against Vision Plasma. As part of the purported reverse merger transaction, Vision Plasma's receiver sold that judgment to the Canadian operating company for $125,000 plus $7,500 in legal fees for a total of $132,500. Upon information and belief, Mulholland was the source of the $132,500 used to purchase the judgment.

17. Simultaneously with its sale, that judgment purportedly was converted into 100 million shares of Vision Plasma common stock (cost basis of $.001325 per share), which were to be issued as reflected in the chart below:

| Number of Shares | Shares issued to: |
| --- | --- |
| 11,000,000 | Anchor Capital Group Inc. |
| 10,900,000 | Bristol Trading Inc. |
| 10,600,000 | Vista Resources Inc. |
| 10,500,000 | Timeline Resources Ltd. |
| 10,400,000 | Alladin Marketing LLC |
| 10,300,000 | Prospera Financial Inc. |
| 9,600,000 | Grindstone International Ltd. |
| 9,250,000 | Powerguard International |
| 8,900,000 | Castlegate Financial Inc. |
| 8,550,000 | Techtrade Investment Inc. |

18. Mulholland controls and is the beneficial owner of at least nine of the aforementioned IBCs, which were set up by an offshore entity located in Belize that specialized in forming IBCs to help clients evade the U.S. securities and tax laws. Those nine IBCs are:

    a. Alladin Marketing LLC,
    b. Bristol Trading Inc.,
    c. Castlegate Financial Inc.,
    d. Grindstone International Ltd.,
    e. Powerguard International Inc.,
    f. Prospera Financial Inc.,
    g. Techtrade Investments Inc.,
    h. Timeline Resources Ltd., and
    i. Vista Resources Inc.

19. On August 9, 2011, a close associate of Mulholland sent an email to a Vision Plasma consultant and instructed him to have the 100 million shares sent to Foreign Bank A.

20. Accordingly, on August 19, 2011, Vision Plasma issued 100 million shares of common stock without a restricted legend (the "unlegended shares") purportedly pursuant to the aforementioned judgment conversion and supposedly in reliance upon Section 3(a)(10) of the Securities Act. To effectuate that issuance, Vision Plasma issued ten certificates in the share amounts reflected in the chart above. Those certificates were issued in the registered name of "Foreign Bank A" for the benefit of the relevant IBC and mailed to Foreign Bank A. In total, the nine IBCs beneficially owned by Mulholland received 89 million unlegended shares of Vision Plasma.

21. On approximately September 12, 2011, Foreign Bank A deposited all 100 million unlegended shares—including the 89 million unlegended shares beneficially owned by Mulholland—into the Depository Trust Company. As a result, within a month of their issuance by Vision Plasma, all 100 million unlegended shares were positioned to be sold into the public market.

22. In approximately January 2012, Foreign Bank A deposited all 100 million unlegended shares into an account in its name at Brokerage Firm A. Beneficial ownership affidavits provided by Foreign Bank A and Legacy Global to Brokerage Firm A show that Foreign Bank A held all 100 million unlegended shares for its client, Legacy Global, which in turn held those shares for the ten IBCs identified above.

23. A close associate of Mulholland completed the paperwork required to deposit the 100 million unlegended shares at Brokerage Firm A. Upon information and belief, that associate acted at the direction of Mulholland.

24. In late April 2012, Foreign Bank A transferred 75 million unlegended shares from its account at Brokerage Firm A to Legacy Global's account at Caledonian Bank.

25. Upon information and belief, in approximately June 2012, one of the IBCs beneficially owned by Mulholland transferred 5 million unlegended shares to an unknown entity, which also maintained an account at Foreign Bank A.

26. As a result of the aforementioned transfers, Legacy Global held 95 million unlegended shares of Vision Plasma, at least 84 million of which were beneficially owned by Mulholland.

27. In May 2012, Vision Plasma issued 230,320,838 shares bearing a restricted legend to Shilo Capital Inc., another IBC setup by an offshore entity located in Belize. Mulholland controls and is the beneficial owner of Shilo Capital Inc.

28. In total, prior to the opening of trading on August 16, 2012, Mulholland—through the ten IBC's controlled and beneficially owned by him—held at least 314,320,838 shares of Vision Plasma. At that time, Vision Plasma had 375,168,783 shares issued and outstanding, meaning Mulholland beneficially owned approximately 84% of the total issued and outstanding shares.

29. Vision Plasma's public float as of August 16, 2012 was 100,048,783 shares. Mulholland beneficially owned at least 84,000,000 (approximately 84%) of the shares in the float.

7

30. According to Vision Plasma's quarterly disclosure report for the period ended June 30, 2012, which was posted on OTC Market's website, each share of Vision Plasma common stock is entitled to one vote on all matters submitted for a shareholder vote, including the election of directors. As a result, by beneficially owning 84% of Vision Plasma's common stock, Mulholland had the power to dictate the results of any shareholder vote, and, thus, he controlled Vision Plasma.

31. There was virtually no trading activity in shares of Vision Plasma prior to August 16, 2012.

32. On August 16, 2012, the ten IBCs that held 95 million unlegended Vision Plasma shares at Legacy Global sold 94,050,000 of those shares for sales proceeds of approximately $24,547,817. Included in that total, the nine IBCs beneficially owned by Mulholland sold 83,050,000 unlegended shares on August 16, 2012 for proceeds of approximately $21,645,753.

33. Mulholland sold the Vision Plasma shares that he beneficially owned through Legacy Global, which executed the sales through accounts at: (1) Foreign Bank A, which executed its trades through Brokerage Firm A and cleared them through a different registered broker-dealer located in the United States; and (2) Caledonian Bank, which executed and cleared its trades through other registered broker-dealers located in the United States.

34. No registration statement was filed with the Commission or in effect covering the sale of the 94,050,000 unlegended shares by Legacy Global on behalf of its ten IBC clients.

35. Mulholland was an affiliate of Vision Plasma. Accordingly, the brokerage firms and other entities that executed his sales were underwriters, thus, disqualifying his sales from the exemption provided by Section 4(a)(1) of the Securities Act.

36. Mulholland himself also was an underwriter because he obtained shares from Vision Plasma with a view to distribute them to the public market.

37. Mulholland cannot avail himself of the Rule 144 safe harbor because he exceeded the volume and manner of sale limitations applicable to affiliates of an issuer and because he did not file the requisite Form 144 with the Commission.

## FIRST CLAIM

### Violations of Securities Act Sections 5(a) and 5(c)

38. The Commission repeats and realleges Paragraph 1 through 37 of this Complaint as if fully set forth herein.

39. As alleged herein Mulholland, directly or indirectly, and notwithstanding the fact that there was no applicable exemption: (a) made use of the means and instruments of transportation or communication in interstate commerce of the mails to sell, through the use or medium of a prospector or otherwise, securities as to which no registration statement was in effect; (b) for purposes of delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means and instruments of transportation, securities as to which no registration statement was in effect; and (c) made use of means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium or a prospectus or otherwise, securities as to which no registration statement had been filed.

No valid registration statement was filed with the Commission or in effect with respect to Mulholland's sales of, and offers to sell, shares of Vision Plasma.

40. Because the Defendant's offers and sales of Vision Plasma securities were not registered and were executed in interstate commerce, the Commission has established the elements of a *prima facie* case of violations of Section 5 of the Securities Act [15 U.S.C. §§ 77e].

41. The Defendant made offers of securities in the United States and sold securities in the United States in that: (a) sales were executed by broker-dealers firms in the United States; (b) irrevocable liability with respect to sales was incurred in the United States; and (c) title with respect to the sales passed in the United States.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Enter judgment in favor of the Commission finding that the Defendant violated Sections 5(a) and 5(c) [15 U.S.C. §§ 77e], as alleged herein.

### II.

Enter an Order of Permanent Injunction restraining and enjoining the Defendant, his agents, servants, employees, attorneys and those persons in active concert or participation with him who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Sections 5 [15 U.S.C. §§ 77e].

### III.

Enter an Order requiring the Defendant to disgorge, with prejudgment interest thereon, all illicit profits or other ill-gotten gains received, and all amounts by which the Defendant has been unjustly enriched, as a result of the violations alleged herein.

### IV.

Order the Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

### V.

Enter an order requiring Mulholland to prepare a sworn accounting to provide an accurate measure of Mulholland's unjust enrichment and of his current financial resources, including an accounting of all the money Mulholland obtained from sales Vision Plasma.

### VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VII.

Grant such other relief as this Court deems just and proper, including a conduct-based injunction and other such equitable relief as may be appropriate or necessary for the benefit of investors.

Dated: June 23, 2015
       Washington, DC

By: _____
Michael J. Roessner, MR4195
Assistant Chief Litigation Counsel
Attorney for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E., Mail Stop 5631
Washington, D.C. 20549
Tel: (202) 551-4347
Fax: (202) 412-1277
Email: roessnerm@sec.gov